# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

CAROLYN D.,

   *Plaintiff,*

v.

FRANK BISIGNANO, Commissioner of Social Security,[1]

   *Defendant.*

Case No. 1:24-cv-01377-JEH-RLH

## REPORT & RECOMMENDATION

Plaintiff Carolyn L. ("Carolyn") filed this suit to challenge an administrative law judge's ("ALJ") finding that she is not disabled under the Social Security Act and thus ineligible to receive disability benefits. This case has been referred for a report and recommendation. (*See* Text Order Dated Apr. 24, 2025.) Upon review, the Court finds that the ALJ's analysis at step three missed the mark. So the Court recommends that his opinion be reversed and the case remanded.

## LEGAL STANDARDS

**I.   The Social Security Act**

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from

---

[1] This case was filed against Martin J. O'Malley, but Frank Bisignano has since been appointed the Commissioner of the Social Security Administration. Bisignano is thus substituted in O'Malley's place by operation of law. *See* Fed. R. Civ. P. 25(d).

"any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

> **Step One.** Is the claimant currently engaged in substantial gainful activity?
>
> **Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?
>
> **Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?
>
> **RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?
>
> **Step Four.** Based on the claimant's RFC, can they perform their past work?
>
> **Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's

2

ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.     Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, Courts may not try the case de novo or supplant the ALJ's factual findings with their own. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). As such, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of

the evidence, and more than a scintilla." (citation modified)). Yet, although the ALJ's decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJ's need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

# BACKGROUND

## I. Carolyn[2]

Carolyn was born in 1963, (R. at 84[3]), and has completed high school and one year of college. (R. at 88). She previously worked as a cleaner for a residential apartment complex, a hotel, and a tire store. (R. at 89–91.) At the hotel, Carolyn supervised other employees performing that kind of work. (R. at 92.) She was last employed in 2023 and currently lives in an apartment by herself.[4] (R. at 95, 302.)

At the hearing before the ALJ, Carolyn testified that she was involved in a car accident in 2018 that resulted in a back injury. (R. at 93.) She explained that the residual effects of her injury make it difficult to stand or walk for long periods. (R. at 94.) Daily tasks like grocery shopping are also difficult because she experiences social anxiety. (R. at 98.) Carolyn also experiences migraines. (R. at 99.) She explained that she takes medication for her migraines, that they occur at least two times a week, and that they last for up to six hours. (R. at 99.) After discussing Carolyn's other impairments, the ALJ posed a series of hypotheticals to the vocational expert. (R. at 110–13.) The vocational expert testified that a person with Carolyn's limitations would be able to work as an "executive housekeeper," which was the formal title for Carolyn's job at the hotel. (R. at 113.)

---

[2] The following is not a comprehensive analysis of Carolyn's testimony nor of the administrative record. The Court summarizes only those portions that are relevant to the analysis below.

[3] "R." refers to the Certified Administrative Record filed on December 4, 2024. (Doc. 6.) The page numbers cited in this Report and Recommendation refer to the black page numbers at the bottom right of the transcript, rather than the green page numbers generated automatically by CM/ECF at the top right of the page.

[4] The ALJ found, however, that the compensation for this employment did not meet the threshold for "gainful employment" under the Social Security Act. (R. at 43.)

## II. Procedural History

In March 2021, Carolyn filed an application with the Social Security Administration for disability benefits, alleging that she has been disabled since March 1, 2018. (R. at 32.) Her application was initially denied in September 2021 and denied upon reconsideration the following January. (R. at 32.) She then requested a hearing before an ALJ, (R. at 32), which took place in July 2023, (R. at 38.) Present at that hearing were Carolyn, her attorney, and a vocational expert. (R. at 38.)

After the hearing, the ALJ issued a written opinion concluding that Carolyn was not disabled and therefore not entitled to disability benefits. (R. at 44.) In response, Carolyn sought review of the ALJ's decision with the Appeals Council, but her request was denied. (R. at 20.) Carolyn secured new counsel and requested an extension of time to file this appeal, which was granted. (R. at 1.) Carolyn then filed a complaint in this Court to challenge the ALJ's decision, (Doc. 1), along with a motion to proceed in forma pauperis, (Doc. 2). The Court granted her IFP motion, (*see* Text Order Dated Oct. 10, 2024), and Carolyn filed her brief in February 2025, (Doc. 8.) The Commissioner filed his brief in April. (Doc. 11).

## III. The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Carolyn was disabled. At step one, he determined that Carolyn has not engaged in "substantial gainful activity" since her alleged onset date of March 1, 2018. (R. at 34.) At step two, the ALJ found that Carolyn had the following severe impairments: (1) disorders of the skeletal spine; (2) migraines; and (3) anxiety. (R. at 34.) At step three, the ALJ concluded that none of those impairments met or medically

equaled any of the listed impairments. (R. at 35–37.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

> [Carolyn] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb stairs and ramps; occasionally climb ladders, ropes, or scaffolds; occasional balancing as defined in the Selected Characteristics of Occupations of the DOT; and occasional stooping, kneeling, crouching, and crawling. [Carolyn] must avoid occasional, concentrated atmospheric conditions as defined in the Selected Characteristics of Occupations of the DOT. Mentally, [Carolyn] can have occasional interaction with the general public; and occasional interaction with co-workers and supervisors.

(R. at 37.) At step four, the ALJ found that Carolyn's RFC would allow her to perform her past work as an executive housekeeper. (R. at 43.) Based on the ALJ's conclusion at step four, he determined that Carolyn is not disabled. (R. at 44.)

## DISCUSSION

Carolyn makes three arguments. First, she contends that the ALJ applied the wrong legal standard at step three of the evaluation process. The Court agrees, and on this basis recommends that the case be remanded. The Court then addresses Carolyn's two remaining challenges: (1) that the ALJ failed to account for her migraines in assessing her RFC; and (2) that the ALJ did not account for her limitations in concentration, persistence, or pace. Because these arguments ask more of the ALJ than the Social Security Act requires, the Court rejects them.

### I.    The ALJ's Listing Analysis for Carolyn's Migraines

Carolyn argues that the ALJ "applied an incorrect legal standard when analyzing" her migraine condition at step three of the evaluation process. The Court agrees.

7

To summarize, step three—sometimes called a "presumptive" or "per se" disability analysis—asks whether the claimant has an impairment "that meets or equals an impairment found on the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d)). Put another way, step three asks whether a claimant suffers from a medical condition that generally causes symptoms so severe the claimant is presumptively unable to work. If so, they are disabled and automatically eligible for benefits. To *meet* a listed impairment, a claimant must satisfy each of the listing's criteria. *Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999). To *equal* a listed impairment, the claimant must demonstrate "that her impairment is accompanied by symptoms that are equal in severity to those described in the specific listing." *Barnett*, 381 F.3d at 668.

Yet "there is no specific listing for a primary headache disorder, such as migraines." *Thomas H. v. Kijakazi*, No. 3:22-cv-50331, 2023 WL 6388145, at *2 (N.D. Ill. Sept. 29, 2023). Instead, the Social Security Administration has issued Ruling 19-4p, which "indicates that Listing 11.02 (Epilepsy) is most analogous for evaluating migraines." *Id*. Under that ruling, ALJs are to assess whether the claimant "exhibit[s] equivalent signs and limitations to those detailed in paragraphs B or D of Listing 11.02 for dyscognitive seizures." *Id*. To evaluate whether a claimant's migraines are equal in severity to paragraph B off Listing 11.02, Ruling 19-4p instructs ALJ's to consider the following:

> A detailed description from an AMS [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used

8

> for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.* at *3 (quoting SSR 19-4p, 2019 WL 4169635, at *7) (alterations in original). In addition to the paragraph B criteria, ALJs must also consider the paragraph D criteria under Listing 11.02. Paragraph D asks "whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." SSR 19-4p, 2019 WL 4169635, at *7.

Here, the ALJ correctly recognized at step three that he was required to "consider listing 11.02 in conjunction with SSR 19–4p" to evaluate Carolyn's migraines. (R. at 35.) Yet immediately after doing so, the ALJ observed that Carolyn did not suffer from "generalized tonic-clonic seizures" or "dyscognitive seizures." (R. at 35.) He then concluded that Carolyn's migraine condition did not meet or equal a listing. (R. at 35.) That was error. As Carolyn correctly observes, the ALJ mistakenly applied the criteria for determining whether a person with *epilepsy* experiences that disorder in such a way that they are presumptively disabled. (*See* Pl. Br. 9 ("By requiring proof of seizures, the ALJ" analyzed whether Carolyn "'met' listing 11.02, not whether the condition 'equaled' the listing.").) Indeed, the entire purpose behind SSR 19-4p is to guide an ALJ's determination whether a person who has a migraine disorder experiences symptoms that—although different from—are nonetheless

9

equally severe to a person with epilepsy. To that end, SSR 19-4p requires ALJs to assess, among other things, a typical headache event, associated symptoms, their frequency, and treatment protocols. *Thomas H.*, 2023 WL 6388145, at *3. Because the ALJ found that one of Carolyn's severe impairments was her migraine disorder, he was required to analyze her symptoms under SSR 19-4p. He did not do so.

The Commissioner makes two counterarguments, but neither are persuasive. First, he asserts that Carolyn "does not identify what Listing the ALJ should have considered or what Listing she believes fit her condition better than Listing 11.02." (Comm'r Br. 3.) This misses the nuance of Carolyn's point. The issue is not that the ALJ applied the wrong listing—to the contrary, he correctly identified both the relevant listing and Social Security Ruling. The issue is that *when* the ALJ applied that listing (in light of SSR 19-4p), his analysis proceeded as if Carolyn had epilepsy rather than a migraine disorder. Of course no evidence of seizures appeared in the record: seizures are a symptom of epilepsy, not migraines. But as the ALJ himself recognized, what *did* appear in the record was evidence that Carolyn suffered from migraines. (R. at 34.) That is why he found migraines to be among Carolyn's severe impairments in the first place. (R. at 34–35.[5]) So, although the ALJ identified the correct listing, his application of it to the facts of Carolyn's case missed the mark.

Second, the Commissioner argues that Carolyn's "Listings argument is undeveloped and deemed waived." (Comm'r Br. 3.) This is puzzling. Carolyn's listing

---

[5] The Court notes that the ALJ did not specifically discuss Carolyn's migraine disorder, other than to say that it, along with her other disorders, "significantly limit the ability to perform basic work activities as required by SSR 85-28." (R. at 35.)

10

argument appears under the first heading of the argument section of her opening brief and spans approximately three pages. (*See* Pl. Br. 7–10.) It details the legal standards that govern step three of the evaluation process, identifies the relevant social security ruling, and explains how the ALJ's analysis departed from the Administration's own guidance. (*See* Pl. Br. 7–10.) To be sure, the Commissioner is correct to suggest that parties who include arguments that are "perfunctory and undeveloped" waive them. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). And Carolyn's listings argument could have been longer. But three pages was more than sufficient to allow this court to understand it. *Cf. James M. v. Saul*, No. 2:20-cv-183, 2021 WL 2820532, at *2 (S.D. Ind. July 7, 2021) (finding argument waived where claimant included no more than "a discussion of some legal principles" followed by a "description of an issue"). To consider this argument waived, as the Commissioner suggests, would penalize Carolyn for presenting her argument in a concise and direct way. The Court declines to do so.

Since the ALJ's listing analysis fell short, the only question is whether it warrants remand. Carolyn argues that "harmless error does not apply to cases where the wrong legal standard is applied" because "[c]ourts give no deference to decisions based on the wrong standard." (Pl. Br. 10 (citing *Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1094–95 (E.D. Wis. 2001).) The Commissioner's brief is silent on the point. In any event, the ALJ's listing analysis requires remand. This Court is limited to determining whether the ALJ's findings are (1) supported by substantial evidence and (2) based upon proper legal criteria. *See Clifford*, 227 F.3d at 869. When the

Commissioner employs *improper* legal criteria (as here), this Court's function is not to conduct the analysis in the first instance and predict what result the ALJ would have reached. *See Amy O. v. Kijakazi*, No. 21-cv-2146, 2022 WL 16696266, at *3 (N.D. Ill. Nov. 3, 2022) (remanding where the ALJ omitted "specific evidence" to support his conclusion at step three and provided no "explanation of the relevant listings' required criteria"); *see also Thomas*, 2023 WL 6388145, at *2 (remanding because the court did not believe that it could "predict with great confidence that the ALJ will reach the same conclusion as to Listing 11.02 on remand").

## II.   Carolyn's Remaining Challenges

Although the ALJ's listing analysis warrants reversal, the Court briefly addresses Carolyn's two remaining challenges so that the proceedings on remand will be more focused. As discussed below, both challenges impose a greater burden on ALJs than does the Social Security Act.

### A.   Whether the ALJ Erred by Failing to Explain Which Aspects of Carolyn's RFC Were Caused by Which Impairments

First, Carolyn argues that the ALJ "did not explain which limitations in the RFC (if any) were intended to account for [Carolyn's] migraines." (Pl. Br. 12.) In other words, the ALJ failed to key the specific restrictions in Carolyn's RFC to her migraine disorder. The Commissioner responds that an ALJ is not required to "provide a direct correlation between severe impairments and restrictions" in the claimant's RFC. (Comm'r Br. 6.) The Commissioner also observes that the Seventh Cricut "has not yet decided" whether such a one-to-one correlation is required. (Comm'r Br. 6.)

12

Carolyn's argument relies almost exclusively on a January 2022 opinion issued by the Southern District of Indiana. *See Doris M. v. Kijakazi*, No. 1:20-cv-2561, 2022 WL 432337 (S.D. Ind. Jan. 19, 2022). There, the court reversed an ALJ because he did not explain how he assessed the claimant's headaches "and accounted for any resulting limitations in the RFC." *Id.* at *7; *see also id.* at *6 ("The reviewing court is left to guess why the ALJ deemed headaches to be a severe impairment, what limitations the ALJ believed that impairment caused, and how the RFC accounts for them."). The Commissioner urges this Court to reject *Doris*'s reasoning because it "run[s] contrary to" Seventh Circuit precedent and "is inconsistent with the way this district considers and ALJ's duty to determine a claimant's RFC assessment." (Comm'r Br. 7.) The Court agrees.

Asking an ALJ to anchor each restriction in a claimant's RFC to a particular impairment is asking too much. *See, e.g.*, *Warnell*, 97 F.4th at 1053 (7th Cir. 2024) (explaining that ALJs are "subject to only the most minimal of articulation requirements"). To see why, consider an analogy. Disability adjudication is like a pie; the evidence in the record the list of ingredients; and the ALJ's opinion the recipe—i.e., the process he undertook to arrive at the pie from the ingredients. So long as the ALJ's recipe is reasonably calculated to yield a pie and does not omit important ingredients, the substantial evidence standard is met. But Carolyn's argument would have the ALJ—once he has baked the pie—explain which components of the finished pastry are caused by which ingredients. For example, that the crumble effect is a result of the granulated sugar, that the caramel flavor is thanks to the brown sugar,

13

or that the pie owes its structure to the flour. No recipe need go that far, and neither does an ALJ. That is, an ALJ need not craft an RFC only to then provide an exhaustive, point-by-point breakdown of how each individual limitation maps onto each impairment. Simply put, explaining precisely which limitations in the RFC are caused by which impairments is not required. The ALJ need only explain how the sum total of the claimant's symptoms supports the RFC. *Roddy*, 705 F.3d at 638.

Nor would it be practical (or wise) to impose such a requirement. That is because a one-to-one correlation between a claimant's medical impairments and their symptoms is probably not something that could be drawn. For example, if a claimant with a previous lower back injury and fibromyalgia experiences "pain," must the ALJ determine what—as between those two impairments—causes the pain and hence limits the claimant's ability to work? Of course not. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor . . . ."). And the social security regulations bear this out. When conducting an RFC, an ALJ must ask two questions: (1) whether the claimant has an impairment (or multiple impairments) that *could be expected* to produce symptoms; and (2) if so, whether and to what extent the claimant *actually experiences* those symptoms. *See Schneck*, 357 F.3d at 701. Notably absent from that two-step framework is what Carolyn contends the ALJ here failed to do: work backwards from her symptoms and speculate about which impairment is responsible for causing them.

At bottom, it is not impairments alone that render a claimant disabled; it is how those impairments present themselves in a claimant's daily life and hence limit

14

their ability to work. *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as the inability to work "*by reason of* any medically determinable physical or mental impairment" (emphasis added)). In other words, impairments are a necessary—but not a sufficient—condition for finding a claimant disabled. An ALJ does not err by failing to draw precise lines between a claimant's impairments and their functional limitations; they err by inexplicably omitting a claimant's limitations from their RFC. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[T]he ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record . . . ." (quoting *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015)).

### B. Whether the ALJ Erred in Failing to Account for Carolyn's Limitations in Concentration, Persistence, and Pace

Second, Carolyn observes that the ALJ found that she had mild limitations in concentration, persistence, and pace ("CPP"). (Pl. Br. 14; *see also* R. at 36.) She argues that the ALJ erred by failing to account for those limitations in his RFC: "Despite finding that [Carolyn] has mild limitations in persistence and pace, the ALJ did not account for any such limitations in the RFC." (Pl. Br. 14.) The Commissioner responds that Carolyn's argument "has been repeatedly rejected by Courts in this district." (Comm'r Br. 9 (emphasis omitted).) The Commissioner has the better argument.

At the outset, Carolyn does not take issue with the ALJ's finding that she had mild CPP limitations. Instead, she suggests that, as a matter of law, an ALJ errs when he does not include those limitations in his RFC assessment. But that is not the law—numerous courts in this District have affirmed ALJs who, after finding the claimant had mild CPP limitations, did not include them in their RFC assessments.

15

*See, e.g.*, *Michele C. v. Kijakazi*, No. 3:23-cv-2075, 2024 WL 2974159, at *2 (C.D. Ill. June 10, 2024) ("[I]t is possible that a limitation is unnecessary to include in the RFC assessment." (citing *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013)); *Christine R. v. Comm'r of Soc. Sec.*, No. 23-cv-02074, 2024 WL 1173743, at *4 (C.D. Ill. Feb. 5. 2024) (same); *Deborah E. v. Kijakazi*, No. 2:20-cv-2004, 2021 WL 6807995, at *2 (C.D. Ill. Dec. 20, 2021) ("Plaintiff is incorrect in asserting that anything the ALJ describes as a 'limitation' must be explicitly included in an RFC assessment.").

Thus, there is no legal rule that a claimant with mild CPP limitations ipso facto possesses functional limitations in those areas. And the absence of such a rule makes good sense. Indeed, a "'mild' limitation in mental functioning means a person's ability to function 'independently, appropriately, effectively, and on a sustained basis is slightly limited.'" *Leanna B. v. Comm'r of Soc. Sec.*, 22-cv-1342, 2024 WL 1173741, at *2 (C.D. Ill. Feb. 12, 2024) (quoting 20 C.F.R. pt. 404, subpt. P, App. 1). Whether that "slight limitation" rises to the level of a concrete functional limitation depends, of course, on the facts of a particular case. Here, as the Commissioner observes, the ALJ supported Carolyn's RFC with the results of Carolyn's cognitive tests, her conduct at the hearing, clinical findings, and the opinions of the state agency consultants. (Comm'r Br. 7–8.) Carolyn does not dispute—and, for these reasons, the Court does not find—that the ALJ's opinion lacked substantial evidence on this score.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED in light of this Report and Recommendation. On

remand, the Commissioner should assess Carolyn's evidence in light of SSR 19-4p and discuss whether her migraine impairment equals listing 11.02B or 11.02D.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen days after service of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*So recommended.*

Entered this 5th day of December 2025 .

s/ Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge
